*In re* MARRIAGE OF GISELA KEKSTADT, n/k/a Gisela Heumann, Petitioner-Appellee, and HAROLD KEKSTADT, Respondent-Appellant.

First District (2nd Division)   No. 79-1619

Opinion filed June 17, 1980.

Nicholas Zagone, of Chicago, for appellant.

Bentley, DuCanto & Doss, Ltd., of Chicago (Owen L. Doss and Paul J. Bargiel, of counsel), for appellee.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Respondent-appellant, Harold Kekstadt, and petitioner-appellee, Gisela Kekstadt (n/k/a Gisela Heumann), were granted a dissolution of marriage effective February 21, 1978. A supplemental judgment, entered on May 31, 1978, retroactive to February 21, 1978, determined the support, maintenance and property rights of the parties. More than a year later Gisela Kekstadt petitioned the trial court "For Instructions and Clarification of Supplemental Judgment." Pursuant to this petition, the trial court ordered a revision to the supplemental judgment, and Harold Kekstadt appeals from this order. The sole issue to be considered by this court is whether the trial court had jurisdiction to enter an order which allegedly modified the supplemental judgment which had been entered more than 30 days prior thereto.

For the reasons hereinafter set forth, we reverse the order of the circuit court.

The provisions in the supplemental judgment pertinent to this appeal provide as follows:

"D. That the property at [9]803 S. Hoyne Street is marital property and that both parties have an equal interest therein; that the petitioner is awarded sole possession of the property and the respondent shall vacate the property immediately.

E. An appraisal will be made of the property to determine the market value and the petitioner shall buy out the respondent's one-half interest at the appraised price within 60 days; if petitioner cannot acquire financing the respondent's one-half interest shall remain a lien on the property with interest running at 9% per annum until the respondent's interest is purchased."

Subsequent to this judgment, on August 22, 1978, a letter was received by petitioner's attorneys from a local realtor stating that petitioner, Gisela Kekstadt, had contacted their office in an attempt to list this property for sale. The letter recites that "a careful market analysis was made which included the enclosed property evaluation," and that "after careful deliberation * * * we feel the fair market value would be $60,000." A copy of this letter and attached evaluation sheet was

forwarded by petitioner's attorney to respondent's attorney on August 29, 1978. Respondent, Harold Kekstadt, maintains that from this date until February 22, 1979, when the property was actually sold, he relied on the realtor's evaluation of $60,000 as the appraised value of the property. Further, although respondent's signature was required to convey the property to the purchaser, he maintains that this was an accommodation on his part to complete the formalities of title transfer and in no way indicates his acquiescence in petitioner's claim that his one-half interest should be based on the selling price of $48,000. The net proceeds from the sale were $25,495.91, which resulted because of various deductions from the gross sales price.

On June 11, 1979, Gisela Kekstadt petitioned the trial court for clarification of the supplemental judgment. Harold Kekstadt answered that the petition was a "subterfuge" to modify the supplemental judgment and that the court lacked jurisdiction to enter such an order more than 30 days after the entry of the judgment. On August 1, 1979, the trial court agreed with Mrs. Kekstadt and ordered that the net proceeds of $25,495.91 be divided equally between the parties and additionally provided that Mr. Kekstadt should receive an amount equal to "9 per cent interest on his one-half from the date of the Supplemental Judgment [May 31, 1978] to today's date [June 11, 1979]." Harold Kekstadt appeals from this order.

The parties in this case do not dispute that a court in a divorce proceeding retains jurisdiction to enforce its decrees. (*People ex rel. Kazubowski v. Ray* (1971), 48 Ill. 2d 413, 272 N.E.2d 225, *cert. denied sub nom. Kazubowski v. Ray* (1971), 408 U.S. 818, 30 L. Ed. 2d 268, 92 S. Ct. 271.) The issue presented in this case is not whether the court retained jurisdiction to interpret its earlier ruling but whether its order of August 1, 1979 was, in fact, such a clarification. Gisela Kekstadt insists that since the supplemental judgment was ambiguous, the court retained jurisdiction to grant her "Petition for Clarification." Harold Kekstadt maintains that the judgment was clear and unambiguous and that the petition was a request for modification. Thus, he contends, the court lacked subject matter jurisdiction to enter the order of August 1, 1979, modifying the supplemental judgment entered on May 31, 1978.

Interpretation of provisions in a divorce decree are governed by the same rules pertaining to the construction of contracts. (*White v. White* (1978), 62 Ill. App. 3d 375, 378 N.E.2d 1255.) An instrument is ambiguous if its meaning is susceptible of being interpreted in more than one sense. (*Sudler v. Sudler* (1972), 6 Ill. App. 3d 546, 286 N.E.2d 113, *cert. denied* (1976), 429 U.S. 921, 50 L. Ed. 2d 288, 97 S. Ct. 318; *Weber v. Weber* (1979), 77 Ill. App. 3d 383, 396 N.E.2d 43.) Additionally, the main objective in interpreting the provisions of a divorce decree is to "give effect to the apparent intent of the court." (*In re Estate of Coleman*

(1979), 77 Ill. App. 3d 397, 399, 395 N.E.2d 1209; *Pope v. Pope* (1972), 7 Ill. App. 3d 935, 289 N.E.2d 9.) However, the simple failure of parties to agree on the meaning of the terms does not render the language ambiguous. *Harris v. American General Finance Corp.* (1977), 54 Ill. App. 3d 835, 368 N.E.2d 1099.

Petitioner initially argues that the judgment was ambiguous because provision "E" states that in the event that she is unable to obtain financing to purchase respondent's one-half interest in the property, as mandated by the first clause of the provision, a lien would remain on the property in favor of respondent. She maintains that the failure of the court to reiterate that the lien would be in an amount equal to the "appraised value" renders the judgment ambiguous. Respondent answers that the paragraph, when read in its entirety, clearly indicates that the lien would be at the appraised value. This appears to be the clear meaning of the order. In the event that the petitioner was unable to acquire financing to purchase her husband's interest, a lien would attach to the property; its seems untenable that the lien would be in an amount at variance with the appraisal that was required by the order in the first clause of the paragraph. Therefore, the intention of the court's order pertaining to this clause seems unambiguous.

However, petitioner further argues that since no appraisal was made of the property and the judgment made no provision for this contingency, the judgment was rendered ambiguous. Respondent asserts that an appraisal was, in fact, made of the property as evidenced by the "evaluation" submitted by the realtor and forwarded to him by petitioner's attorney. Although there may be a question as to whether the supplemental judgment was fully augmented by the parties and whether a formal appraisal was actually obtained, the judgment itself was clear and unambiguous on its face. The judgment was predicated on an appraised value of the property and did not contemplate the sale of the real estate. If there is any lack of clarity presented, it is occasioned by the sale of the property. The trial court's order clarifying the judgment, in light of the fact that the property was sold, was apparently a modification of its earlier ruling. Since we find that the order granting Mrs. Kekstadt's petition was a modification, it must be determined whether the trial court retained jurisdiction to enter such an order.

The jurisdiction of courts of equity to hear divorce cases is conferred by statute (*Smith v. Smith* (1929), 334 Ill. 370, 166 N.E. 85) and thus the equity courts have no inherent power in these cases. (*Brickey v. Brickey* (1976), 44 Ill. App. 3d 563, 358 N.E.2d 406.) Illinois statutory law requires that the final decree in a civil case is a "conclusive adjudication after the passage of 30 days from the date of its rendition." (*Waggoner v. Waggoner* (1979), 78 Ill. 2d 50, 53, 398 N.E.2d 5; Ill. Rev. Stat. 1977, ch. 110, par. 50(5).) Additionally, subject matter jurisdiction in divorce cases

cannot be conferred even by stipulation or consent of the parties. (*Bratkovich v. Bratkovich* (1962), 34 Ill. App. 2d 122, 180 N.E.2d 716.) Property rights created in a divorce decree become vested after 30 days, and the trial court lacks jurisdiction to modify an order affecting those rights. *Jamal v. Jamal* (1968), 98 Ill. App. 2d 180, 240 N.E.2d 246; *Craig v. Craig* (1973), 11 Ill. App. 3d 275, 296 N.E.2d 608 (abstract); *Recklein v. Recklein* (1946), 327 Ill. App. 641, 64 N.E.2d 787.

The instant case is controlled by our supreme court's recent decision in *Waggoner.* In that case the parties were divorced, and pursuant to the property settlement the wife retained their residence "subject to the indebtedness" on the property. Approximately three months after the decree was entered, the wife filed various motions requesting enforcement, clarification, modification or amendment of the decree to remove a judgment lien which had been entered against the property prior to the divorce. The supreme court stated that the "trial court was in error even to consider the plaintiff's motion to clarify or amend the provisions of the decree relating to the liens on the residence." *Waggoner,* 78 Ill. 2d 50, 54.

Although *Waggoner, Jamal, Craig* and *Recklein* were not governed by the new Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.,* effective October 1, 1977), which controls the present controversy, the law concerning modification of orders affecting property rights is apparently unchanged. In *Lamp v. Lamp* (1979), 73 Ill. App. 3d 713, 716, 392 N.E.2d 349, the court stated:

> "Provisions respecting the disposition of the parties' property incorporated in a divorce decree are not subject to modification * * *. This has been established law in Illinois and needs no elaboration. [Citations omitted.] This principle was incorporated in section 18 of the former divorce act (Ill. Rev. Stat. 1975, ch. 40, par. 19), and is reaffirmed without change in section 510(a) of the new act."

Additionally the new act states that provisions concerning property disposition in a decree of dissolution of marriage "may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this State." Ill. Rev. Stat. 1977, ch. 40, par. 510(a); *English v. English* (1979), 72 Ill. App. 3d 736, 393 N.E.2d 18.

In the instant case the supplemental judgment effective February 21, 1978, disposed of the property of the parties pursuant to the dissolution of their marriage. It appears that the trial court's order of August 1, 1979, purportedly clarifying the supplemental judgment actually modified the property rights of the respondent. Under present Illinois law, the trial court lacked subject matter jurisdiction to enter such a modification.

For the foregoing reasons we reverse the order of the circuit court and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

DOWNING and HARTMAN, JJ., concur.