*In re* MARRIAGE OF GRACE McKEANEY MILLIKEN, Petitioner-Appellee, and JAMES MARK WILCOX MILLIKEN, Respondent-Appellant.

First District (4th Division)   No. 1—88—3252

Opinion filed June 7, 1990.

Ralph G. Scheu, of Chicago, for appellant.

No brief filed for appellee.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

A judgment for dissolution of the parties' marriage was entered on July 3, 1985. On September 30, 1988, Grace McKeaney Milliken (petitioner) filed a petition seeking reimbursement from her former husband, James Mark Wilcox Milliken (respondent), for her repayment of a loan made by her brother to respondent during the marriage. Respondent appeals from the order of the trial court granting judgment for petitioner in the amount of $3,810, which represents $3,000 principal and $810 interest.[1] Respondent also requested sanctions against petitioner pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611), for filing a petition which was not reasonably well grounded in law or fact.

This action concerns the following clause in the parties' property settlement agreement:

"The HUSBAND shall be solely responsible for, and shall hold the WIFE harmless of any liability *** for the debt of the HUSBAND to F. Owen McKeaney, in the amount of $3,000.00"

---

[1]The appellee has failed to file a brief in this appeal. However, because the issues before us are ones which can be decided from the record without the aid of an appellee brief, we are not prevented from deciding the merits of the appeal. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

Petitioner alleged that respondent never paid anything toward this obligation to F. Owen McKeaney, petitioner's brother, and that on August 1, 1988, after repeated requests by her brother, she paid him the full amount of the loan plus 9% interest computed from the date of the judgment of dissolution. The petition then stated that "per the terms of the Judgment for Dissolution herein, Petitioner demands indemnification from Respondent in the amount of $3810.00." Petitioner also sought attorney fees, costs and reimbursement for expenses if it became necessary for her to travel from California to testify at a hearing on this matter.

Respondent filed an answer to the petition in which he admitted that although he had proposed a repayment schedule to petitioner's brother, he did not repay the debt. He asserted, however, that the debt was a matter solely between him and petitioner's brother, and that the above-quoted clause in the property agreement did not impose a duty upon him to reimburse or indemnify her for any voluntary and gratuitous payment made by her to a third party of a debt for which she had no legal obligation in the first instance.

Respondent's answer also included a request for sanctions against petitioner and/or her attorney on the grounds that the petition was not well grounded in fact or in law and that counsel failed to make a reasonable investigation into the facts or law. In support of respondent's allegations that the petition was improper, filed in bad faith and brought to harass and needlessly increase the cost of litigation, respondent attached a copy of his attorney's letter, sent prior to the filing of this petition, to petitioner's attorney. In that letter, respondent's attorney contended that the petitioner would be improperly seeking intervention of the domestic relations division of the circuit court in a matter which "lies outside the parameters of the dissolution proceedings"; that neither petitioner nor petitioner's brother, a nonparty to the proceedings, had standing to request the domestic relations division to assume jurisdiction of a subject matter over which no such jurisdiction existed; and that if she filed her petition, he would strongly oppose it on the basis of lack of jurisdiction and would ask for relief under section 2—611.

In her reply to respondent's answer and petition for sanctions, petitioner argued that respondent had never denied the existence or validity of his debt to her brother but, rather, admitted, by virtue of his proposal, in late 1985, of a monthly repayment schedule to begin January 1987, that he owed the money and had no defenses for nonpayment of it. She also asserted that she had been concerned about "the possibility of *** being contingently liable on said debt (family sup-

port doctrine or some other similar theory) and that [she] wanted to protect [herself] from any liability in connection therewith." She argued that were it not for this concern regarding her potential liability and an attendant desire by her to avoid such liability and/or litigation regarding the debt, there would have been no reason to have included the settlement agreement provision at issue, and that the reference to the debt in the agreement "must be taken as an acknowledgment by [respondent] that there was potential liability on the part of [petitioner] to her brother." She maintained that the provision in the agreement was one of indemnification and that respondent's contention that the proper course of action was for her brother to bring suit in the law division would render the provision for indemnification a nullity and would, itself, increase the cost of the litigation by compelling petitioner or her brother to file a new action.

On October 6, 1988, the court entered an order scheduling a hearing "as to jurisdiction only." At that hearing, counsel for petitioner argued that in the judgment of dissolution, the court specifically reserved jurisdiction to enforce its terms. Respondent's attorney responded that the retention of jurisdiction over the parties and to enforce the terms of a judgment, neither of which he disputed, did not extend to the subject matter of petitioner's petition, *i.e.*, a debt which, by the express terms of the provision at issue, was an obligation solely of respondent to a third party. He restated that petitioner's alleged payment of the debt was gratuitous and that petitioner could not be held harmless from her own action of paying something which she had no legal obligation to pay. Counsel reiterated that the court lacked subject matter jurisdiction in this case.

The trial judge stated that it was undisputed that the debt was incurred by respondent while the parties were married and that by the terms of the settlement agreement respondent agreed that he "would hold petitioner harmless if she paid it." On the basis of its interpretation of the clause at issue, the trial court found that petitioner's demand for reimbursement was one pursuant to the terms of the judgment and, thus, that it had jurisdiction over the matter. The trial court then proceeded, without an evidentiary hearing, to enter judgment for petitioner for the amount of the loan, plus interest and costs.

Counsel for respondent immediately requested and was granted permission to make an offer of proof. Counsel pointed to the language of the settlement agreement specifically referring to the debt as "the debt of the husband" and argued that there was no conflicting evidence indicating that the debt was for a family expense or was other-

wise a family debt which would cause plaintiff to be liable or contingently liable, as she asserted. Rather, counsel proferred, competent evidence existed to prove that the loan was not a loan to respondent but, instead, a loan through respondent to the theatre company of which he was the director. Counsel also pointed out that petitioner presented no evidence that she paid the amount she alleged she had paid to satisfy the debt.

Petitioner's attorney acknowledged that no evidence had been presented on the question of payment of the debt, noting that he too understood that the hearing was to be limited to the question of jurisdiction. Counsel indicated his willingness to have the matter continued for the purpose of producing petitioner to testify as to payment of the debt but asserted that in those circumstances, he would renew his request for attorney fees and travel expenses.

The trial court declined to withdraw its ruling and reiterated its entry of judgment for petitioner in the amount of $3,800. Respondent's timely appeal followed.

OPINION

Respondent contends that the trial court lacked jurisdiction over the subject matter of petitioner's petition. Alternatively, he argues that the court's entry of judgment for petitioner without an evidentiary hearing was reversible error.

Equity courts have no inherent power in dissolution cases. The jurisdiction of a court in a dissolution proceeding is limited to that conferred by statute. (*In re Marriage of Kekstadt* (1980), 85 Ill. App. 3d 952, 407 N.E.2d 746; *Brickey v. Brickey* (1976), 44 Ill. App. 3d 563, 358 N.E.2d 406.) Additionally, the final decree in a dissolution proceeding becomes a final and conclusive adjudication after the passage of 30 days from its rendition (*Waggoner v. Waggoner* (1979), 78 Ill. 2d 50, 398 N.E.2d 5; *Brickey*, 44 Ill. App. 3d 563, 358 N.E.2d 406; *In re Marriage of Kekstadt*, 85 Ill. App. 3d 952, 407 N.E.2d 746). It is true that a court in a dissolution proceeding retains jurisdiction for the purpose of enforcing its orders relating to the provisions of the dissolution decree (*People ex rel. Kazubowski v. Ray* (1971), 48 Ill. 2d 413, 272 N.E.2d 225; *Waggoner*, 78 Ill. 2d 50, 398 N.E.2d 5; *In re Marriage of Miller* (1982), 108 Ill. App. 3d 63, 438 N.E.2d 5). However, as the court in *Miller* noted, there is a distinct difference between enforcement and modification. The court has jurisdiction to modify a decree only if it finds a substantial change of conditions which justifies reopening the dissolution judgment. (Ill. Rev. Stat. 1985, ch. 40, par. 510(a); *In re Marriage of Kekstadt*, 85 Ill. App. 3d

952, 407 N.E.2d 706.) Moreover, when a court lacks subject matter jurisdiction, it cannot be conferred by stipulation, consent or waiver (*In re Marriage of Kekstadt*, 85 Ill. App. 3d 952, 407 N.E.2d 706; *Hill v. Daley* (1975), 28 Ill. App. 3d 202, 328 N.E.2d 142); and where subject matter jurisdiction is absent, the court should decline to proceed further in the cause. *Hill v. Daley*, 28 Ill. App. 3d 202, 328 N.E.2d 142; *Toman v. Park Castles Apartment Building Corp.* (1941), 375 Ill. 293, 31 N.E.2d 299.

In *Waggoner v. Waggoner* (1979), 78 Ill. 2d 50, 398 N.E.2d 5, the property settlement agreement specified that the plaintiff was awarded the marital home subject to the indebtedness on it. Three months later, the plaintiff filed a petition for a finding of contempt by defendant, alleging that when she attempted to sell the house, she learned that there was a judgment lien and a second mortgage on the property, and sought to enforce, clarify or amend the decree to provide that she was to take title to the residence subject only to the first mortgage. The Illinois Supreme Court found that the substance of plaintiff's petition was to compel defendant's to remove the judgment lien and the second mortgage lien from the chain of title. The court then held:

> "The decree did not provide that the defendant was to perform these acts. Thus, the plaintiff does not seek to enforce the terms of the decree, but instead to engraft new obligations onto the decree. The effect would alter the substance of the decree. *** Therefore, the trial court was without jurisdiction to entertain the plaintiff's motion ***." 78 Ill. 2d at 53-54.

See also *In re Marriage of Arkin* (1982), 108 Ill. App. 3d 103, 438 N.E.2d 957 (trial court lacked jurisdiction to enter an order compelling respondent to pay taxes and mortgage payments on the marital residence for a period not included in the property settlement agreement because the order constituted a modification of the agreement); *Brickey v. Brickey* (1976), 44 Ill. App. 3d 563, 358 N.E.2d 406 (trial court lacked subject matter jurisdiction to enter an order requiring respondent to reimburse petitioner for that portion of the previous year's income tax overpayment which had been withheld from her wages because the order did not constitute enforcement of the decree but was an adjudication of property rights on which the decree, entered three months earlier, was silent).

In the instant case, the trial court's determination that it was vested with jurisdiction over this matter and its entry of judgment for petitioner were based on its findings that the debt was incurred during the marriage and that irrespective "whether [it was] a legal debt

or a moral debt [of petitioner]" respondent had agreed that he "would hold her harmless if she paid it."

▪ It is undisputed that the loan from petitioner's brother was made during the marriage. However, petitioner did not show, or even expressly allege, that the debt was a marital debt for which she was legally or jointly liable. In the provisions of the settlement agreement assigning responsibility for debts, certain ones, including the one at issue, are specifically referred to as "the debt of the [HUSBAND or WIFE] to [a named individual]." Each party was also made solely responsible for other obligations, such as income taxes and doctor bills, which were simply referred to as "the debts due to [a named individual]." In our view, the inclusion of the language specifically designating certain debts as being the debts of each of the parties and the exclusion of such language with reference to various other debts indicates that the parties agreed that certain debts, including the one at issue, were individual rather than marital debts.

Moreover, the settlement agreement does not state, as the trial court remarked, that respondent "would hold her harmless *if she paid [the debt]*." (Emphasis added.) Nor does the provision at issue provide, as the petitioner asserted, that he would hold her harmless from any "claims upon the *** debt." Rather, as set forth earlier, it specifies that "[respondent] shall be solely responsible for and shall hold [petitioner] harmless from any *** *liability* for the debt" (emphasis added), just as in the very next paragraph petitioner agreed to be solely responsible for certain of her debts and to hold respondent harmless from any liability for them.

▪▪ ▪ It appears that the essence of the petition and of the trial court's order in this case was that upon petitioner's payment of the debt, she became subrogated to the rights of her brother as to payment. The doctrine of subrogation allows a person who, pursuant to a legal liability, is compelled to pay an obligation of another to obtain reimbursement from the party who is primarily liable. Thus, "as a general rule, when one not acting as a mere volunteer or intruder pays a debt for another who is primarily liable, the doctrine of subrogation applies." However, Illinois courts have stressed the necessity for a legal liability to exist in order to invoke the subrogation doctrine. (*Koshel v. Public Building Comm'n* (1990), 199 Ill. App. 3d 545, ____; *Inland Real Estate Corp. v. Tower Construction Co.* (1988), 174 Ill. App. 3d 421, 528 N.E.2d 421.) The voluntary assumption of the payment of a debt, irrespective of the motives of the payor, does not confer upon the payor the status of subrogee. *Inland Real Estate Corp.*, 174 Ill. App. 3d 421, 528 N.E.2d 421.

■ Petitioner did not allege that the language of the settlement agreement made the debt her legal obligation nor did she present evidence that she had been found legally liable for it. Indeed, her reply to respondent's answer merely states that she paid the debt after "repeated requests" by her brother for the amount owed because "there was some question about the possibility of [her] being contingently liable *** and that she wanted to protect herself from any liability" and to "avoid any potential liability or litigation in connection therewith." The agreement does not, however, require respondent to reimburse petitioner for paying a debt which, by agreement of the parties, was expressly assigned solely to him simply because petitioner felt a moral obligation to do so and/or because she was concerned about the possibility of contingent liability and desired to avoid potential liability.

Consequently, in petitioning that respondent be compelled to reimburse her for payment of a debt for which legal liability to her had not been established, petitioner did not seek enforcement of the dissolution decree but, rather, alteration of it so as to engraft obligations not mandated in the original judgment of dissolution entered three years earlier. The trial court was therefore without subject matter jurisdiction to rule on petitioner's petition. (*Waggoner v. Waggoner* (1979), 78 Ill. 2d 50, 398 N.E.2d 5.) Thus, the order of the trial court ordering respondent to pay petitioner principal and interest totalling $3,810 is reversed for lack of jurisdiction.

Inasmuch as the trial court did not have jurisdiction to entertain the petition, we need not reach respondent's contention that the trial court erred in entering judgment without an evidentiary hearing. Further, because the trial court entered judgment for petitioner, it did not consider respondent's counterpetition for sanctions pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). In view of our reversal of the trial court's order, we remand the cause for further proceedings on the issue of sanctions.

Reversed and remanded.

LINN and JOHNSON, JJ., concur.